Matter of William F.G. v Lisa M.B. (2019 NY Slip Op 00774)





Matter of William F.G. v Lisa M.B.


2019 NY Slip Op 00774


Decided on February 1, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 1, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, LINDLEY, DEJOSEPH, AND WINSLOW, JJ.


1244 CAF 17-01983

[*1]IN THE MATTER OF WILLIAM F.G., PETITIONER-RESPONDENT,
v
LISA M.B., RESPONDENT-APPELLANT. SARA E. ROOK, ESQ., ATTORNEY FOR THE CHILD, APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR RESPONDENT-APPELLANT. 
SARA E. ROOK, ROCHESTER, ATTORNEY FOR THE CHILD, APPELLANT PRO SE.
THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR PETITIONER-RESPONDENT.


 Appeals from an order of the Family Court, Monroe County (Joan S. Kohout, J.), entered June 23, 2017 in a proceeding pursuant to Family Court Act article 6. The order, among other things, adjudged that petitioner's wife may supervise his visits with the subject children. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the petition is dismissed.
Memorandum: In this proceeding pursuant to Family Court Act article 6, respondent mother and the Attorney for the Child (AFC) appeal from an order that, inter alia, granted petitioner father's petition to modify a prior order of custody and visitation by naming the father's new wife as the supervisor of his visitation with the subject children and permitting him to designate the location of visitation, including his own home. We reverse.
We note that the prior order, which was entered upon stipulation by the parties after the father was convicted of sexually abusing their then-four-year-old daughter, granted sole legal and physical custody of the children to the mother; required the father's visitation to be supervised by either his therapist, who specializes in sexual abuse, or the maternal grandmother of the children; and specified that visitation was to occur at a location mutually agreed upon by the father and the grandmother.
Preliminarily, we agree with the mother that Family Court erred in drawing a negative inference against her based on her failure to testify at the hearing. The mother had no relevant testimony to offer inasmuch as she had no personal knowledge of the allegations in the modification petition, i.e., the father's completion of sex offender treatment, his compliance with the terms of his probation, his visits with the children, and his marriage to his new wife. Thus, we conclude that a negative inference against the mother was unwarranted because she did not "withhold[] evidence in [her] possession or control that would be likely to support [her] version of the case" (Noce v Kaufman, 2 NY2d 347, 353 [1957]; see Matter of Nassau County Dept. of Social Servs. v Denise J., 87 NY2d 73, 79 [1995]).
We further agree with the mother and the AFC that the father failed to meet his burden, as the party seeking modification of the prior order, of demonstrating a sufficient change in circumstances since the time of the stipulation to warrant an inquiry into the best interests of the [*2]children (see Matter of McKenzie v Polk, 166 AD3d 1529, 1529 [4th Dept 2018]; Matter of Jones v Laird, 119 AD3d 1434, 1434 [4th Dept 2014], lv denied 24 NY3d 908 [2014]). Although the court correctly identified in its decision the applicable standard for modification of an existing custody and visitation order and referenced several circumstances that generally may support a court's finding of a sufficient change in circumstances, the court failed to make express findings relative to the change in circumstances alleged by the father in his petition. Notwithstanding that failure, "we have the authority to review the record to ascertain whether the requisite change in circumstances existed' " (Matter of Allen v Boswell, 149 AD3d 1528, 1528 [4th Dept 2017], lv denied 30 NY3d 902 [2017]; see Matter of Greene v Kranock, 160 AD3d 1476, 1476 [4th Dept 2018]).
Upon our independent review of the record, we conclude that the father failed to establish the requisite change in circumstances (see Matter of Avola v Horning, 101 AD3d 1740, 1740-1741 [4th Dept 2012]). The father's employment, his lack of a criminal history other than the sexual abuse of his child, his completion of sex offender treatment, his lack of a history with Child Protective Services, and his lack of a mental health diagnosis do not constitute a change in circumstances because those circumstances existed at the time of the parties' stipulation (cf. Matter of Chittick v Farver, 279 AD2d 673, 675 [3d Dept 2001]). Although the father's marriage, new home, and diagnosis with sleep apnea are changes that have occurred since the time of the stipulation, those changes to the father's personal circumstances do not " reflect[] a real need for change to ensure the best interest[s] of the child[ren]' " (Matter of Isler v Johnson, 118 AD3d 1504, 1505 [4th Dept 2014]).
Further, we conclude that, under the circumstances of this case, the children's alleged desire to spend additional time with the father also does not constitute the requisite change in circumstances. Initially, we note that the father's petition did not seek additional time with the children, rather, it sought to change the location of visitation and to have the father's new wife replace the maternal grandmother as visitation supervisor. Even crediting the father's assertion that the children have expressed a desire to spend additional time with him, we conclude that the " established custodial arrangement should not be changed solely to accommodate the desires of the child[ren]' " (Matter of Betro v Carbone, 50 AD3d 1583, 1584 [4th Dept 2008]; see Matter of Porter v Nesbitt, 74 AD3d 1786, 1787 [4th Dept 2010]; cf. Matter of Miller v Shaw, 160 AD3d 743, 744 [2d Dept 2018]), particularly where, as here, the children are unaware that visitation with the father has been supervised by their grandmother for the last five years because the father was convicted of sexually abusing the daughter and is a registered sex offender.
Even assuming, arguendo, that the father met his threshold burden of demonstrating a change in circumstances sufficient to justify a best interests analysis, we agree with the mother and the AFC that there is no sound and substantial basis in the record to support the court's determination that the children's best interests warranted replacing the visitation supervisor, their grandmother, with the father's new wife and permitting the father to select any location for his visits with the children (see generally Matter of Lara v Sullivan, 108 AD3d 1238, 1239-1240 [4th Dept 2013], lv dismissed in part and denied in part 22 NY3d 949 [2013]; Matter of Fox v Fox, 93 AD3d 1224, 1225 [4th Dept 2012]). "Generally, a court's determination regarding custody and visitation issues, based on a first-hand assessment of the credibility of the witnesses after an evidentiary hearing, is entitled to great weight and will not be set aside" except where, as here, it lacks an evidentiary basis in the record (Matter of Stilson v Stilson, 93 AD3d 1222, 1223 [4th Dept 2012] [internal quotation marks omitted]; see Matter of McCarthy v Kriegar, 162 AD3d 1563, 1564 [4th Dept 2018]).
The record establishes that the maternal grandmother has a long history of successfully facilitating positive interaction between the children and the father while providing meaningful protection to the children. The grandmother had been supervising the father's weekly visits with the children in her home since 2013. The visits lasted between four and eight hours; the grandmother provided crafts and projects for the father to enjoy with the children during the visits; and the father and the children participated in a variety of activities together, such as swimming in the grandmother's pool, watching movies, playing board games, reading, and playing imaginary games. With the grandmother's supervision, the father and the children have eaten meals together and have gone to restaurants to eat with the father's new wife. There were no issues with the grandmother's supervision of the father's visits until the father brought his new wife to the grandmother's home, unannounced, for his routine visit with the children, and [*3]the grandmother refused to allow the father's wife into her home. That same day, however, the grandmother brought the children to a restaurant so they could eat with the father and his new wife and visit with them both. In addition, the grandmother testified at the hearing that she would be willing to allow the father's wife into her home as long as she had notice; the grandmother also stated that she would be willing to supervise visits at the father's home. Thus, we conclude that, in light of the five years during which the grandmother successfully supervised visitation, the isolated incident involving the grandmother's unwillingness to allow the father's wife into her home did not warrant modifying the prior order to replace the grandmother with the father's wife as the visitation supervisor.
In addition, the record establishes that the father's wife would supervise her husband's visits with his children through a very different lens than would the grandmother, whose allegiance is to the children. The testimony of the father's wife demonstrates that she did not know the details of the sexual abuse committed by the father against his daughter; rather, her understanding was that "the incident occurred when he was sleeping and he had inappropriate contact with his daughter." Thus, she believed that he did not intentionally engage his daughter in sexual contact and that the sexual abuse occurred accidentally while the father was asleep. Based on the above and given the father's conviction of sexually abusing the daughter, we conclude that the court's determination that it is in the best interests of the children for the father's wife to supervise visitation at his home or any other location he chooses lacks a sound and substantial basis in the record. We therefore reverse the order and dismiss the petition.
In light of our determination, we do not address the AFC's remaining contention.
Entered: February 1, 2019
Mark W. Bennett
Clerk of the Court